## Leipheimer License

*Roger J. Soens*, for appellant.

*John E. Stevenson*, for Secretary of Revenue.

OLIVER, P. J., May 5, 1954.—This matter is before us on appeal from a suspension of an operator's license by the Secretary of Revenue. Appellant's license was suspended for a period of 90 days for speeding and making an improper pass. Under section 616 of The Vehicle Code of May 1, 1929, P. L. 905, we heard the case de novo.

The court makes the following findings of fact:

1. On May 22, 1953, on a clear and dry day, appellant operated an automobile along Route 22, between Lewistown and Mount Union, Pa., at a speed of 65

miles per hour, exceeding the speed limit of 50 miles per hour at that location.

2. The evidence that he also made an improper pass is too vague and uncertain to sustain the charge that he did so.

3. Appellant was not consciously reckless, and did not endanger the lives or property of third persons.

4. Appellant is in business for himself, and must travel through at least 12 States by automobile in order to maintain and supervise his business.

5. Appellant has traveled nearly a million miles in his driving career, over a period of many years, without accidents or mishaps and with no other charge made against him except that once, 8 or 10 years ago, he passed a stop sign at State College.

### Discussion and Conclusion

The duty of this court in appeals of this nature has been set forth by Mr. Justice Patterson in Commonwealth v. Cole, 350 Pa. 369 (1944), 371-73:

"All of these (cited) cases hold that an appeal to the court is not for the purpose of reviewing the evidence taken before the Secretary, and his action thereon, but to hear evidence and determine, in the exercise of the court's sound discretion and in the furtherance of justice, whether the license should be suspended."

See also Commonwealth v. Strobel, 375 Pa. 292 (1953).

The evidence is that five cars in a line were driving up a moderate hill approaching a moderate curve. The first car was being driven slowly. Car no. 2 pulled out to pass it and so did car no. 3 driven by defendant. State Trooper Shevnock in car no. 5 pulled out at the same time and followed them. The trooper claimed they made an illegal pass, but he based his charge only on the contention there was approaching traffic dangerously close. He expressly disclaimed basing it

on any contention that the pass was illegal because of any curve in the road or because made on a hill.

As to this charge the trooper was vague. He said merely he saw defendant "making an improper pass in the face of oncoming traffic". He did not indicate what the traffic was, how far it was away from defendant, how fast it was coming, or give any other details. He did not even explain whether he, in car no. 5, was also able to pass in the face of this oncoming traffic or had to wait until it passed and then take off in pursuit of defendant and the driver of car no. 2. In short, we have in effect merely a statement of his conclusion and no facts to support it. On the other hand defendant and a friend who was seated beside him both testified there was no oncoming traffic.

However, the trooper after passing the slow car followed close behind defendant and "clocked him for a quarter of a mile" and found that defendant was driving at the rate of 65 miles per hour in a 50-mile zone.

The trooper then overhauled car no. 2 and stopped it. He then stopped defendant. He gave a summons to each driver.

Defendant, at his request, was given an immediate hearing, found guilty on both charges, was fined and paid his fine.

We do not place too much weight upon the payment of the fine because most busy men would rather pay and be through with the matter, even though innocent, than be compelled to post bond and appeal.

However, as to the charge of driving in excess of the speed limit, the officer's testimony was clear and precise and defendant's testimony was vague. He testified that, after he speeded up, his speed was only "probably 45 or 50". But, at the hearing for revocation of his license, he was told he was charged with driving at 65 miles per hour, and was then asked, "Do you know how fast you were traveling at that time?"

He replied, "Don't know how fast I was going at that time". At the hearing before this court, he further said, "Well, after all, when you are passing a car you don't watch the speedometer".

So, as to speed, we have clear and precise evidence from the State trooper and evasive, uncertain answers from defendant. We are convinced that defendant was materially exceeding the speed limit as charged and that he did so after having passed car no. 1 and not merely in the act of passing it.

We therefore find that defendant was guilty of exceeding the speed limit by 15 miles per hour, but that he did not make an illegal pass.

Under the facts of this case absolute suspension of the license for three months would be extremely harsh punishment. Ordinarily, economic hardship by itself is not enough to revoke the secretary's order: Commonwealth v. Emerick, 373 Pa. 388 (1953), and the cases cited in that volume on pages 400, 402, 404, 407, 409 and 411. But the necessity for appellant to travel extensively throughout a number of States in order to maintain his business distinguishes this case from the ordinary case where the only economic hardship involved is local transportation to and from a place of business or employment. In addition, appellant has an excellent safe driving record over a period of many years.

We have, at most, inadvertence rather than recklessness and, under the leading case of Commonwealth v. Emerick, supra, this court may properly consider all such extenuating circumstances along with economic hardship in reaching its decison.

We conclude that absolute suspension of appellant's license for three months would be excessive and unjust punishment. Since, however, appellant violated The Vehicle Code in a substantial manner, we think the ends of justice would best be promoted by modifying

the order of the Secretary of Revenue so that appellant will be permitted to drive for business purposes only, for a period of 90 days.

### Order

And now, May 5, 1954, the order of the Secretary of Revenue is affirmed as modified. It is hereby ordered and directed that the Secretary of Revenue issue to appellant a restricted license for business purposes only, for a period of 90 days.