**PennDOT v. Beears**

*Donald H. Poorman, deputy attorney general,* for the commonwealth.
*Douglas C. Maloney,* for defendant.

RUFE, *J.,* February 19, 1987 — On September 26, 1986, the arresting officer properly took defendant to the police station for a breath test. Defendant agreed to the test and made three attempts to blow into the machine. On two of those attempts the machine displayed a digital readout of .14 percent and .16 percent blood-alcohol, but defendant failed to fill the air chamber of the machine which activates the printout mechanism to produce a card reporting the final result. Defendant informed the officer of a heart condition that made breathing difficult for him and the officer did not testify that defendant appeared to be engaging in any of the usual subterfuges to avoid completing the breath test.

Defendant agreed to submit to the taking of a blood sample at a local hospital, whereupon the officer informed defendant that he therefore would not consider the failure to complete the breath test as a refusal to take the test. At the hospital defendant willingly agreed to the drawing of blood. However,

the hospital presented him with a waiver/release form which defendant refused to sign. Defendant stated he was willing to have blood drawn, but he did not want to sign any papers. The officer then informed him that he now considered the refusal to sign the papers for the drawing of blood as a refusal to submit to the test itself.

At the hearing the attorney for the commonwealth, being familiar with the decision in *Commonwealth, Department of Transportation v. Maffei,* 53 Pa. Commw. 182, 416 A.2d 1167 (1980), wherein the court held that agreeing to the drawing of blood, but refusing to sign a waiver does not constitute a refusal to take the test, acknowledged that the blood test activities at the hospital did not constitute a refusal. He sought then to go back to the breath test activities to support the department's suspension decision for refusal to submit to the test.

Thus, two questions are raised: (1) If a defendant provides sufficient breath during a breath test to produce a reading clearly demonstrating violation of the act, is it a refusal if that amount of breath is insufficient to activate the machine's printout report card mechanism? (2) If the officer specifically informs defendant that his failure to satisfactorily complete the breath test is not considered to be a refusal, is the commonwealth bound by that announcement? We find that the answer to both questions is yes.

While defendant in the present case provided enough breath for two readings, both of which proved him guilty, we believe that the completed test is necessary. The completed test which activates the printout mechanism is the standard test to which all drivers must submit when properly requested by an arresting officer. Anything short of

the completed standard test, even if a digital readout is obtained, affords opportunity for chicanery and abuse of the testing process. Had the test results in the present uncompleted test read .16 percent and .13 percent (instead of .14 percent as testified), would we then have had the additional argument that the test results exceeded the .02 percent differential limit[1] and, therefore, must be suppressed? Or would another defendant argue that even though he had not provided sufficient breath to activate the printout mechanism, his digital readings of .07 percent should be accepted and his case dismissed? Accordingly, we find that failure to complete the test by filling the chamber with breath sufficient to activate the printout machanism is tantamount to a refusal to take the test in the absence of evidence of mental or physical inability. See *Commonwealth, Department of Transportation v. Day*, 93 Pa. Commw. 49, 500 A.2d 214 (1985).[2]

However, in the present case the arresting officer specifically informed defendant that he would not consider the failure to complete the breath test as a refusal. Should such an announcement by the arresting officer be binding on the commonwealth as it relates to defendant? We hold that it is. A defendant who is told that refusal to take the test will result in a one-year suspension, and then is further told by the officer administering the test that his insufficient efforts still do not constitute a refusal, should not then be subject to another departmental func-

---

1. PennDOT Rules and Regulations effective January 1, 1985, §77.24(a)(2)(i); Pa. Bulletin, Volume 15, No. 8, Saturday, February 23, 1985.

2. We are aware defendant contends he did present evidence of physical inability, but we would resolve the factual question against him.

tionary's second guessing of the circumstances months later as to whether the arresting officer properly assessed the situation. Defendant should be able to rely on the statements of the officer administering the test on the question of refusal or non-refusal in order to decide whether to proceed further to satisfactorily complete the test or allow his actions to constitute a refusal.

We have found no cases addressing this specific question, nor have either counsel referred us to any. We are aware of *Commonwealth of Pennsylvania, Department of Transportation v. March,* 101 Pa. Commw. 171, 515 A.2d 661 (1986), wherein the court upheld a suspension when the arresting officer misinformed defendant that refusal would cause a six-month suspension rather than the one-year suspension the law called for. The court held that the arresting officer was required to inform defendant that his license would be suspended if he refused to take the test. The officer was not required to correctly advise him of how long the suspension would last. Following that same rationale, it follows that if the officer informs defendant that his actions do not yet constitute a refusal, then those actions to that point should not trigger the suspension. Defendant should not be able to rely on the officer's evaluation of his performance and still have the option of going further to complete the test or refusing from that point forward.

Accordingly, we enter the following

## ORDER

And now, this February 19, 1987, defendant's appeal is sustained and his driving privileges are reinstated as to this suspension only.